Please keep your voices up because the microphone in front of you is not a PA system, it's only a recording device. And we'd all like to hear what you have to say, even the people in the back of the room would like that. So first off, who are the appellants? Who's going to be orally arguing? I will be arguing, your honor. And you are, sir? My name is Joseph Sorce. And the attorney for the appellee? My name is David Rock, R-O-C-K, your honor. David Rock. Okay, gentlemen. We really don't enforce time super tightly, but keep in mind, if you want to have a rebuttal, save time from your argument. You both have, I'd say, you both have 20 minutes. So, appellant, reserve 5-10 minutes of that for your rebuttal. Okay? Good luck to both of you. We'll begin with the appellant. Thank you. Thank you, your honor. Your honors, may it please the court, counsel, I'd like to introduce Tristan Dunn, who is my partner, and she wrote the appellate briefs in this matter. This is a little bit unusual, I think, for an appellate argument, in that we're not going to be throwing case law at each other and trying to parse and distinguish it as typically is done. The focus here is on communications between Acuity Insurance and Nick Ameloroso, specifically two documents, a letter dated September 19, 2014, from Acuity to Nick, and two, a World Comp Settlement contract, which Acuity prepared a month later. By background, very quickly, Nick was rear-ended and seriously injured by Valdez, who only had a $25,000 insurance policy. Nick also was working at the time he was hurt, so he also had a World Comp claim with Acuity. Acuity wanted to settle with Nick in September of 2014, so they sent Nick a letter that said four things on September 19. The first thing was that Nick had a $25,000 insurance policy.  The third thing was that Nick had a $25,000 insurance policy. So before you get to that, can I just ask kind of a preliminary question? Are there two policies here? Yes, there are, Your Honor. There's a World Comp policy that Acuity gave to Nick's employer, Thermo Mechanical, and then there is another policy by Acuity for the UIN coverage. Because the policy that's referred to in the complaint is one policy, and they refer to it as both. Correct. And that doesn't make sense, and it actually, that's the auto policy, and it excludes workers' comp. But there is a separate policy, but it's not in the record. You are correct, Your Honor. I just want to clarify that. You're correct. Okay. So the September letter from Acuity to Nick makes four assertions. Number one, Acuity says it can recover 75 percent, or $18,750, on Nick's claim against the tort fees or VELVETS. Acuity says, number two, it's going to collect that $18,750 by deducting it from the offer in the workers' comp case. Number three, Acuity says, and I'm going to quote their language because I think it's very important, Acuity will waive its rights to recovery in your third-party case. And then number four, Acuity says, again, in their language, and this is the critical term, quote, you have opened a UIM claim, but recovery from that coverage is not an option for workers' compensation. So what Acuity is saying is that they have a recovery on VELVETS' claim. They can claim there, but they can't claim against the UIM. That's their letter in their words. But after Nick wins the arbitration and gets a significant award from Judge Nutterman of $3 million, Acuity now wants to set off the work comp claim, although they said they had no recovery against it. Now, Nick's a pipefitter, and he believes that Acuity has released any recovery against the UIM claim because that's what the letter said to him. But I'm going to assert to the panel that even if Nick was a lawyer and he read that letter, he would reach the same conclusion. That's the clear, precise meaning of when they say they have no recovery as against the UIM claim. What's more important, I think, is that that statement is admissible as evidence under 801. It's an exception to the hearsay rule. They have made an admission by a party opponent. And that's not hearsay. It's also in a written document. So I think under 1007, a statement by an agent against the interests of the party in a way. Are you saying it's an admission, or are you saying it's a waiver? I'm saying it's an admission that they are waiving any claim. So I'm saying both. Okay. I'm saying both, yes. I think besides that, there's a second admission, and that's the other statement in the letter that they're going to waive their rights to recovery in the third-party case. Now, it clearly is argued to the panel here that the third-party case is not referring to the UIM case, but that's the only case that's remaining. What about the case law that says UIM are first-party claims? Your Honor, there's only that one case that they cited. And that case, I think it was Abrams, involved the interplay between a UIM policy and an excess insurance policy. It had nothing to do with workers' com. And they're not referring, Acuity is not referring to any contract language or any contract definition of first versus third party. Third party is a very common term in the workers' comp universe. It simply refers to a claim beyond the workers' comp claim. In workers' comp, the petitioner is the first party. Respondent is the second party. Any other claim is the third party. So these are not terms of art. It's the best argument that Acuity could raise. Do you have some sort of support for what you just said? I don't, Your Honor. My argument is that Acuity is asserting that argument, and they have no support for it. You don't know if the third party is just any other claim. No. Isn't it generally an insurance claim against their policy is a first party claim generally? I've been a PI practitioner for 35 years, and we commonly use that term to tell a workers' comp person that beyond the workers' comp claim, there is another claim available. And it might be a UIM claim. It might be a civil liability claim. I guess I'm asking, is there some authority for that? I don't have that authority, Your Honor. Yes. Thank you. So the point, though, is that there is no other claim in this universe other than the UIM claim. And Acuity is saying that they're waiving their rights to recovery in the third party case. That has to be the UIM claim. Well, what if the other driver was a mega-millionaire with a $25,000-a-month policy? You know what? No. Couldn't you have a claim against beyond the policy limits? That's theoretically possible. And I think that's the inducement that Acuity was making, is they wanted Nick to take their offer in the workers' comp case, to take the set-off, because they wanted to wrap up the particular claim. They didn't want him to be pursuing a theoretical claim against the third party beyond the policy limits. So that was the reliance that Nick had on Acuity when he decides to take the offer on the workers' comp. He's giving up any potential ever claim. There probably wasn't one. There probably was just the insurance. They have to be offering Nick something. They're not really offering him a waiver on the Valdez claim, because they're collecting on the Valdez claim. So what they're offering him is, you take this money on comp. We'll take some money back on Valdez. And you can still have your recovery over there, whatever that is. And the only over there is the UIM claim. There's nothing else. I'm not sure that waiver requires reliance, but my point is there definitely was reliance here. So we have the first admission that there's no recovery against the UIM. We have the second admission that they're waiving their third-party claim. The Acuity made a very curious argument in their brief on page 17 that the Valdez claim was still pending. So any reference to a waiver of the third party in their September letter had to be referring to the Valdez claim. Well, that's a novelty. The Valdez claim disappeared when Acuity took $18,750 from that claim. The fact that Nick didn't sign the release against that claim until a couple months later is of no import here. I should mention that not only did Acuity get the $18,750, but when Nick succeeded at the arbitration, Acuity asserted a set-off for the remaining $6,250. Acuity took back every penny of the Valdez claim. Well, and that was the third party, right? And even under their definition of what a third-party claim is, Valdez then got that. That's my point, Your Honor. And I'm going to ask on this, too, but the math here, just, I don't get it. In the complaint, paragraphs 4, 10, and 12, they state the amount that was paid to Nick. And you agree with that? Yes. And that adds up, you don't have to take my word, you've got to take my calculator's word for it, though, to $1,018,750. I don't get it. Do you have any explanation for that? I do, Your Honor. I'll do my best. I never really asked on that to a general then. I'm not disputing that Acuity was entitled by the policy language to a set-off, and that, according to the policy, they should have been allowed to deduct the $315,000. But what I'm saying in my arguments, written and oral, is they lost that policy right. They lost it by that September 17th letter and by the two sections that I quoted, and Nick relied upon that. So your math is correct, Your Honor, and if they hadn't sent that letter, Nick would have collected about a million dollars between the workers' comp and the UIL. That's correct. No, but I think Judge Griffin's question is, how did he get more than the million-dollar policy limit? Why do we have more than the million? Because... I think it's probably an arithmetic mistake that letter was. It should have added up to the million dollars or very close to it. Perhaps counsel has a better answer than I. It should be pretty close to a million. And under your argument, he should have gotten about a million-three or a million-three-fifths. That's correct. That's correct. Because we start with a million. They're claiming a set-off for the workers' comp, and then they're claiming a set-off, I think, for $18,750. Which is the amount that, according to the complaint, that's what I know. Right. It should have came to a million. I'm going to have to do a calculation myself, Your Honor. Okay. Okay. All right. So... Let's see. I could have covered that. All right. I think some of the confusion is Acuity's argument here about this waiver language and what's being waived. And I think Judge Cohen, who's a very respected jurist, got confused by Acuity's argument. Because here's what Judge Cohen wrote in his order. The lien rights being waived under 5b were the rights to assert a lien against Amales' recovery from Valdez. And then Judge Cohen wrote, The evidence presented establishes only a waiver of Acuity's statutory lien rights against Amales' recovery from Valdez. But Acuity did not waive its lien. They collected fully on its lien. So Judge Cohen misunderstood that key fact. His order is saying that they're asserting a waiver against Valdez by the September 19th letter. But the letter itself says we're taking back $18,750. And then the next month when they draft the contract, they did take back the $18,000. So there could not have been you can't interpret the letter as Acuity saying they're waiving their rights as against Valdez because they collected every penny. I think they clarified in the settlement agreement any further recovery is what they say. And they said that's what they meant all along. We took $18,500, and now we've waived any rights, any further recovery. Right? Right. They did throw that into the contract, the Ropers' Comp contract. Right. That's correct. And that's what they mean in the letter. They're taking $18,500, but they're waiving anything beyond that $18,500. I don't know what rights they have beyond the $18,500. It sounds like that's all the rights they could possibly have. I think that's the only way that it could be read, whether you're a pipefitter or a lawyer. I don't know how else the two documents can be read. Okay. So why can't it just mean that? They're saying we're taking $18,750, and we're waiving our right to recover anything beyond that. And that's the argument that I'm making here. They did have to. That's the argument they're making here. I'm confused now. Isn't that the argument they're making? All the letter says is we're taking $18,750, and we're waiving anything beyond the $18,750. Yeah. Well, then they would not be taking a set-off against the – they're taking a set-off for the $300,000 that they paid for Ropers' Comp benefits. So the letter says we'll take $18,750, and we're waiving everything else. We have no other recovery. But a year later when Judge Newman says that they have to pay $1 million – actually, it was a $3 million award – they're saying, okay, we're going to take a $300,000 set-off now. They're contradicting the letter. They're contradicting the – Okay. So this goes back to your view that the third-party case is not just the $25,000 insurance policy. It's anything that's recovered vis-à-vis the cost. You're correct, Your Honor. In fact, I'm arguing it's the only thing it can be is the UIM claim. There's no other possibility. That's all that was left. They had settled the comp case. They took back the money from Valdez's recovery. There's no other claim other than the UIM. That's all it can be. Getting back to my original question, and this may be following up on Judge Cohen's order, the letter says it's regarding the workers' comp claim. That's how it starts out. This letter's regarding the workers' comp claim. So that would be under the workers' comp policy. So whatever they did, let's just assume you're right. They waived everything under the workers' comp policy. But there's a separate policy, the UIM policy. Even though it's not in the record, we're saying that there is. And it could be a different carrier. It isn't. But could a waiver under one policy be considered a waiver under another policy that really this letter isn't about, although it has the sentence that I'll be asking them about where it's mentioned, but it says recovery is not an option, so I don't know what that is. But anyway, you see what I'm saying? How could the waiver under the comp policy include, because as you said, the contractual language in the underinsured motorist section is clear. It is. So anyway, that's my question. It's a good question, Judge. And in all honesty, it's one I really hadn't anticipated. But let me try and answer it anyway. I'm looking at the acuity letter. It does start out saying this is regarding the worker comp claim, but it just says acuity. And then the letter goes on to talk in paragraph 3 about the worker comp claim, and then it talks about the UIM claim, and then it talks about the Valdez claim. It discusses all three claims. And it just says acuity insurance on the letter. It doesn't say acuity workers' comp division. So to answer your question, if this were two different insurance companies, insurance company A could not waive as against insurance company B. I agree. But because this is all acuity, not all, the insurance is not acuity, but the UIM is acuity, and the comp is acuity, and acuity is discussing the UIM. And it's not just talking about lien rights. Acuity is using the word recovery two times in that letter. So it's talking about recovery as against the UIM, and it says that's not an option. And then it says its right to recovery is waived in the third-party case. There's only one way Nick Amoroso could interpret this letter, and that's acuity is giving up its claim. But I do agree, Judge. If there were two insurance companies here, I could not be making that argument. Thank you, Mr. Cerci. We'll allow you five minutes for rebuttal. Thank you, Your Honor. Thank you very much. Mr. Rock, please proceed. May it please the Court, Counsel. I think most important to begin is to clarify the timeline a little bit here. Mr. Cerci has made the claim that that's the only case that's remaining is the UIM claim. On September 19, 2014, there were three claims pending. There was the workers' compensation claim for which Acuity was the insurer. There was the third-party claim against the at-fault driver, Valdez. And there was the underinsured motorist claim for which Mr. Cerci had demanded arbitration at that time. The third-party Valdez claim had not settled. It remained viable. And so it's an incorrect factual assertion to say that this is the case. But isn't he right that in the September 19th letter you're already saying we're going to take $18,750 from that third-party claim? He is, yes. But I think your question to Mr. Cerci illuminated what Acuity was doing in that case in saying your insurance policy is the $25,000. That's the amount that we're going to take 75 percent of. So it's a done deal. Yes. But he can pursue anything further. The release hadn't been executed. The offer had been made, but there was no acceptance of that offer by Amasa Lorso at that time. You don't say if you accept this offer, we're going to take $18,750. It sounds like it's a done deal. That's all I'm saying. This was an offer as well. There was an offer in the third-party Valdez claim of the policy limits. And this letter is also an offer under the workers' compensation claim. So I guess what are you giving up, waiving its rights to the third-party case if you're taking $18,750? We're waiving the right to pursue lien rights. And this was done for Amasa Lorso's protection because the release had not yet been executed. And so ACUITY needed to – I mean, it's true that they were asserting their lien rights in this letter. We absolutely agree. But they needed to do it and advise Amasa Lorso that they were doing it, which was the entire purpose of this paragraph because they ultimately were taking the – the other claim had not yet resolved. And so we still had a third-party claim that could have proceeded to judgment had Amasa Lorso wished to do so. The – again, the release was not entered until significantly later, months after. And there was no acceptance of the offer by Valdez and its insurer in the third-party case. So just – what does that sentence in there that says you've opened an underinsured motorist claim, but recovery from that coverage is not an option for workers' compensation, what does that mean? Yeah, absolutely, Your Honor. It's – ACUITY is differentiating in this letter, and they do it, I think, multiple times, the three claims. They say, one, this – as you – as we pointed out to counsel, this is about your workers' compensation case in the first sentence of the letter. Then in this paragraph and sentence that you're referencing, they say, you've also opened this UIM claim, but this letter isn't about that. This is about your comp claim and the amounts that we're entitled to. And so this paragraph of the letter where it states recovery from available money from an at-fault party is 75 percent of the available money per Illinois law, so in this case it is $18,750, et cetera, What ACUITY is doing there is explaining to a mausolosa in layman's terms Section 5B of the Workers' Compensation Act and how it interacts with his workers' compensation claim. Let's go back. Recovery from the UIM policy is not available. That's what it says. It says recovery from underinsured motorist coverage is not an option for workers' compensation. So we, the workers' comp carrier, can't recover anything from the UIM cover. That's what it says, right? That's not an option for us. We can't take anything out of the UIM policy. No, this is a reference to a mausolosa cannot recover anything from workers' compensation.  You can't... I'm confused. I mean, it sounds to me like it could mean we can't take anything from the comp policy, right? We, the UIM carrier, can't take anything... I'm sorry. We, the comp carrier, can't take anything from the UIM policy. I don't disagree with that, Your Honor. I don't think that as the comp carrier they can take anything from the UIM policy. However, the UIM policy specifically includes language that allows them to take the set-off from the comp policy. So this is the UIM carrier taking it from the comp carrier, not the comp carrier taking it from the UIM carrier. Well, this letter is the comp carrier telling a mausoloso what it will be doing with respect to Section 5B of the Workers' Compensation Act. Your Honor, Judge Fairfax's question is focused on that sentence above, which has nothing to do with 5B. It doesn't. I don't believe that. No, I understand that, yes. So explain that sentence to us, because that's the sentence that's troubling. You've opened a UIM claim, but recovery from that coverage is not an option for workers' comp. What does that mean? You're saying a mausoloso cannot recover from his UIM claim with respect to his workers' compensation claim. There are three claims here. Acuity is able to recover money paid out under the workers' compensation claim. Recovery from available money per Illinois law is $18,750, so acuity's offer will be reduced. I mean, it's differentiating all three claims. And it's saying acuity can recover pursuant to 5B. There's no recovery pursuant to the UIM claim here, but there is this waiver of rights to recovery in your third-party case because, and again, this language is differentiating the third-party case, which we live in an age of technological access. We can look on the Internet what a third-party case is, and the results are simply that when you have a work accident, the person who's at fault, if it's not your employer, is the third-party. And a third-party claim is one that the person injured initiates against that negligent party, that at-fault person, which is exactly what we have here with Valdez. But is it an argument to be made that the UIM coverage actually stands in the place of what Valdez should pay, but because he doesn't have enough coverage, the UIM policy kicks in? That $3 million, that's all Valdez's liability. That's whose liability we're paying for, right? Yes, yeah, Valdez's... That is all the third-party claim against Valdez that's being compensated, actually, by the UIM because he doesn't have enough coverage. Well, but that's the key distinction here, honestly, Your Honor, is because the UIM claim is him recovering from his own insurance. He's recovering from the policy that's issued to Thermo Mechanical by ACQUITY. But it's really for Valdez's tort, correct? Valdez is the under-insured motorist. He's the under-insured motorist. I understand the point that you're trying to make, Your Honor, but no, I think that because of the nature of insurance, what ACQUITY is doing is paying money under a contract that, yes, it is paying because there was an accident. But this isn't ACQUITY stepping into the shoes of the person who was harmed. It's ACQUITY paying pursuant to a contract that they've written the amount of under-insured motorist coverage that they have available. But it has to be default, right? Yes. You know, moving over to the settlement agreement, there was a line stricken. Petitioner accepted the policy limits of $25,000 from the at-fault motorist. Why was that stricken, you know? Because the claim hadn't been resolved yet, and they needed to change that because he hadn't yet accepted the limits. The settlement agreement was not entered into. Let me clarify. The settlement agreement with Valdez and eAssurance was not entered into until February of 2015. And so had they not stricken that language and introduced the other language, I mean, theoretically, they would have been able to continue to pursue their lien rights once that case got resolved. I wouldn't have done so because they would have understood the operation of what was happening, but that's what the language is there for, that they could have potentially pursued those lien rights. So basically what you're saying, I think, is there's an agreement to a lien credit, even though the settlement hasn't been finalized yet with Valdez and eAssurance. Yes. But there's an agreement with you and the Mr. Ammazel. Right. And what's your lien credit going to be? Right. And one that needed to be entered. Except it's beyond lien credit. It's being subtracted from the workers' comp settlement. As a lien credit, though. Yeah, but it's already being subtracted. Right. You know, it hasn't been recovered. It's being subtracted even though he hasn't recovered it yet. That's correct. It was subtracted before he had actually recovered it. Because he had the opportunity, if he wanted to, to continue to pursue the Valdez claim to judgment. I mean, it hadn't been resolved at that time. This is kind of a silly question, but I should know the answer. Once he takes that 25, I assume he waives all rights to pursue anything against Valdez, correct? Correct. Okay. And in this case, he took the 25 in February of 2015 after this workers' compensation settlement was entered into. Okay. I think it's also important, I think, Your Honors, to clarify that, you know, even some of the arguments that counsel made today and in his briefs were about the ambiguity of the letter. And I think that it's important to note that the Illinois Supreme Court has held that, you know, waiver requires an intentional, clear, unequivocal relinquishment of a known right. And there simply isn't that here. What the waiver is is of an entirely separate thing. And, you know, to, for this court to apply that to a setoff, which the word setoff is nowhere in this letter anywhere, for the court to apply this waiver to that would not be, I mean, it's simply not an intentional relinquishment of this right. But in other cases where the court has found the waiver, it's primarily been in a reservation of rights letter where the purpose of which is specifically to say, here are the rights we will eventually pursue after the, you know, duty to indemnify context, or after the duty to defend our case is complete, we will assert these with respect to your duty to indemnify. And that's not the situation we have here whatsoever. Do you have an explanation for that million 18,750? Well, I think it's just it's the operation of the statutes together, Your Honor. I think that what happened with the comp claim was that they had an amount that ACUITY plans to pay. And they then reduced that amount by the 18,750. And the Amazo-Urso accepted that agreement. And then Amazo-Urso was able to recover the full amount, 25,000, in his claim against Valdez. And then the amount, based on the operation of how the setoffs work in the ACUITY policy, was he was entitled to, ACUITY was entitled to take setoffs for the amount of the comp settlement, which was set at 308. And then the 6,250, which was the portion of the settlement for which it hadn't already taken a credit. And so that just left the 684 that ACUITY paid, I believe, a little over a year ago to Mr. Amazo-Urso. Two questions. Yes. One is, how does ACUITY get the 6,250 since they said that they waived rights to any further recovery against Valdez? How did they get that 6,250? They get the 6,250 pursuant to the language of their policy, which states… Well, I understand. I understand the language of the policy. But you bet. Haven't you waived? It says ACUITY. It doesn't just say ACUITY, the comp carry. It says ACUITY waives the right to recovery in your third-party case, which sounds to me like, at the very least, you're waiving the right to any more money from Valdez. I understand your question, Your Honor. However, I would make sure to make clear that recovery and set-off are different concepts under the law. Recovery is ACUITY would be actually obtaining money back, which is how 5B works, from Valdez, well, from Amazo-Urso after he resolves the Valdez settlement. But here, what they are doing is taking a set-off, as they are entitled to do under the policy, which they never – there was no – there's no recovery there. They're not obtaining anything. They're actually paying out their policy limits. Got it. And then the second question is, why does it add up to more than a million dollars? Right? It's supposed to be a million dollars, and anything that Amazo-Urso got, you get a credit for, and then you pay him a million dollars. That's basically your position. We'll pay you a million dollars, but we get a credit back for anything – we get a set-off for anything you got from COMP, anything you got from Valdez. We get credits for all that. So let's say ACUITY hadn't said their piece up front about the $18,750 and what they were doing and that they were waiving their right to pursue. They would have made an offer of $326,000 or something in that neighborhood, and then Amazo-Urso would have recovered presumably the same $25,000 in the Valdez claim, and then ACUITY would have been able to take, pursuant to 5B, $18,750 of that, which leaves set-off amounts of $326,000 and the $6,250 that we were discussing before. Then ACUITY's payment, pursuant to those set-offs, might actually be less. It would be, under the UIM, they would have an $18,750 fewer payment, I guess, if it was done in that way. Although I'm not 100% on this math I want to say, Your Honors. You have one minute to conclude. Okay. Let me just, sorry, let me ask one quick question. Was there a settlement agreement? In what case, Your Honor? In, well, in the context of the terms of the policy. There's terms, it's argued in the briefs. No, there was not a settlement agreement. That required that, while it's not at issue in this case, that would have required an agreement between Amasa Lorso and ACUITY regarding the amount of his damages, but that actually was resolved at arbitration. There was no settlement agreement because that was the procedure taken. May I conclude? I know I'm getting a little bit close. I think, Your Honors, that this is ultimately a simple case. I think ACUITY's correspondence had nothing to do with set-offs, and the language third-party case does specifically refer to the third-party claim against Valdez. It's about ACUITY's lien rights, and even if it's not, even if it's a little bit ambiguous, the law of all labor in Illinois is clear that there needs to be an intentional, unequivocal relinquishment of ACUITY's known right. Thank you. Thank you, Mr. Soros. Five minutes, sir. I have five points. Counsel just said a moment ago that a set-off is not a recovery. That's not accurate. A set-off is certainly a recovery by ACUITY. If they're setting off $300,000, that's $300,000 they don't have to pay. Ironically, if they asserted a lien, Illinois would get 75 percent of that under the Comp Act. Here, they're getting 100 percent. So a set-off is certainly a recovery for ACUITY. Certainly Nick Amorosa, reading the September 19th letter where they're talking about a recovery and they never mentioned set-off, would not have understood that distinction. Counsel also said there wasn't a waiver, that it wasn't precise and it wasn't unequivocal. But as Judge Cohen noted in his decision, a waiver can arise either expressly or by conduct, inconsistent with an intent to enforce the right. He cites to the Sears case, 285, that 1046 for that authority. And I think we meet both possibilities of waiver, an express waiver and also a course of conduct, inconsistent with an intent to enforce a right, a right that they did have under their policy. But they're letting Nick know they're not going to enforce that right. Judge Grisham, I think you had asked about these policies. And I'm trying to put together an answer. In ACUITY's brief, they mentioned the policy is number K58130. And Judge Cohen, in his decision, said the World Comp policy was the same number. I think they're the same policy, not just the same insurance company. I think we're, and I'm not 100 percent sure on this, but I think the Comp and the UIM are under the same policy. Just so you know, there's a policy attached to the complaint. And I went through the entire thing, and that's not a workers' comp. As a matter of fact, it excludes workers' comp. Right, right. So I don't know. Okay. Two last points. Counselor argued that there was no acceptance of the Valves E-Insurance offer by MLS until months later when he signed the release. Well, September 19th, we're talking about taking 18,750 out of the Valves E-Insurance policy. Nineteen days later, on October 6th, they actually did take the 18,750 off the comp case. So whether Nick signs the formal release a day later, four months later, it doesn't matter. They took the money. That claim against Valves was concluded as far as acuity wanted and as far as acuity needed. Finally, the language that they say is not unequivocal and precise. If that's true, it has to be construed against acuity. It's their language. They're a big, sophisticated insurance company with access to very fine lawyers. Nick is a very fine pipe fitter living on the southeast side of Chicago. He's reading what seems to be in plain English either a waiver or an admission that there is no recovery against his remaining UIM claim. It's the only way it can be read, and it should be construed against acuity. That's all that I have, Your Honors. Thank you, Mr. Sarsi. Thank you. Thank you, Mr. Rock. Thank you to both of you for excellent presentations, which hopefully have cleared up some issues in our comments. We're going to take this matter under advisement.